# SAMUEL BEERS *et al.*

*v.*

# THE PEOPLE *ex rel.* Henry B. Miller, etc.

1. TAXES—*who must apply for judgment.* In counties under township organization, the county collector, and not the sheriff, is the proper person to make application for judgment against delinquent lands for taxes.

2. SAME—*of the report, as showing taxes due.* A collector's report on application for judgment, which states that it contains the list of lands, etc., upon which remain due and unpaid the amounts levied and assessed for the year 1873, and also which remain due and unpaid, for which the property was forfeited to the State for the unpaid taxes for the years 1871 and 1872, with interest at ten per cent, and costs, and upon which remain due and unpaid the taxes and special assessments for the year 1870, together with the names of the owners, as far as known, and the total amount due and unpaid on each tract, and which also states that the figures in the column headed "Total tax," represent the total taxes due thereon, respectively, is a sufficient compliance with the statute, as stating the total amount of taxes claimed to be due.

3. SAME—*of the notice of application for judgment as to term.* The collector may apply for judgment against lands for taxes at the May term, and if, from any cause, it is not made, or the judgment recovered, at that term, he may apply at any subsequent term, and he may fill the first blank in his notice, given in sec. 182 of the Revenue Law, with the term to which he makes the application, and the second blank with the Monday on which the sale is to be made.

4. SAME—*complaints may be heard by county board through a committee.* A county board may hear and determine individual complaints against an assessment for taxation through a committee of its members, to whom such matters may be referred. And if such committee give notice of the time and place of their meeting to receive complaints, and report their action, which is approved by the board, this will be a sufficient compliance with the law.

5. SAME—*irregularities and omissions not fatal to tax.* The failure to give the notice or hold a meeting by the assessor, supervisor and town clerk, to hear complaints against assessments for taxes, or any other error or informality in the proceedings of any of the officers connected with the assessment, levy or collection, not affecting the substantial justice of the tax itself, will not, under the statute, in any manner vitiate the tax or assessment.

6. SAME—*presumption as to validity of tax.* In the absence of proof to the contrary, it will be presumed that an assessment of property for taxation

has been properly made, and the tax levied is just and proper, and this especially where no complaint by the party assessed has been made to the township board of review or to the county board.

APPEAL from the County Court of Cook county; the Hon. MARTIN R. M. WALLACE, Judge, presiding.

This was an application by Henry B. Miller, collector of the county of Cook, for judgment against certain lands and town lots, for taxes due thereon, for the year 1873 and prior years. The appellants appeared and filed various objections to the rendition of judgment, those of importance being noticed in the opinion of the court. The county court overruled the same, and rendered judgment against the property, to reverse which this appeal was taken.

Mr. EDWARD ROBY, and Messrs. HOLDEN & MOORE, for the appellants.

Mr. JOHN M. ROUNTREE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The first question presented is, that the sheriff, and not the collector, is the proper person to apply for an order to sell delinquent lands for taxes. This question was considered and decided in the case of *The People* v. *Brislin*, 80 Ill. 424, and the case of *The Chicago and Northwestern Railroad Co. et al.* v. *The People, ante* 467. Hence we deem it unnecessary to further discuss the question.

It is next urged, that the proceeding "is not nor does it profess to be for the 'total' amount due or claimed to be due on the land for the year named." Sections 182 and 192 of the Revenue Law are referred to in support of the position.

On turning to the collector's report, he says the list of lands and lots upon which remain due and unpaid the amounts levied and assessed for the year 1873, and also which remain due and unpaid for which the property was forfeited to the State for the unpaid taxes for the years 1871 and 1872, with interest at ten per cent, and costs, and upon which remain due and unpaid

the taxes and special assessments for 1870, together with the names of the owners, as far as known, and the total amount due and unpaid on each tract and lot. He also says, the figures in the column headed "Total Tax," represent the total amount of taxes due thereon, respectively. We are unable to see why this is not in every respect a rigid compliance with the requirements of the Revenue Law, so far as this objection is concerned. If the objection exists it is not perceived, and counsel have failed to specify how or in what it consists. They have left us to conjecture as to what it applies.

It is next claimed, that the notice is insufficient, as it would authorize a sale at a different time from that fixed by law.

The application was made to the August term, 1874, of the Cook county court, and the notice so specified the term, and fixed the day of sale for the 28th day of the following September. The 182d section requires the notice of the application after the first day of April. It requires that he shall give notice that he will apply to the county court at the ——— term thereof for judgment, and shall give notice that on the ——— Monday next succeeding the day fixed by law for the commencement of the term to which the application is to be made, he will sell the lands and lots, etc.

It is objected that the collector has no power to fill these blanks, and hence the notice is insufficient. Had counsel turned to the 185th section, they would have found that the application should be made to the May term of the county court, and the collector is required to specify the Monday on which the sale shall be made. This section, however, provides, that if, from any cause, judgment is not rendered at that term, it shall be held legal to have judgment at any subsequent term of the court. It will thus be seen, that the collector may apply at the May term, and if, from any cause, such application should not be made or the judgment recovered, he may apply to any subsequent term; that it was intended that he should fill the first blank in his notice in the 182d section with the term to which he would make the application, and to fill the

second blank with the Monday on which the sale would be made, is apparent.

The criticism that the blank means nothing, is not well made. The 182d section is substantially the same as the 26th section of the Revenue Act of 1853 (Sess. Laws, p. 74,) which has the same blank left to insert the term of court as that found in the 182d section, and the profession and collectors since that time have uniformly held, that it indicated that the officer should insert the term to which he intended to apply, in the notice, instead of leaving it blank, as found in that section. Such long and uniform construction is reasonable, and must be held to be not only warranted, but altogether proper.

It is next urged, that the county board did not hear complaints of individual assessments for taxation, at the July meeting, in 1873. It appears that the commissioners met on the second Monday of that month, and a standing committee of three of their number was appointed, to whom all assessment rolls and tax matters were referred, and they published a notice that they would meet on the 12th day of August, 1873, at 10 o'clock A. M., at the county commissioners' room, and continue in session three days, to consider the assessments for the year 1873. They described themselves as the committee on equalization of taxes. The minutes of the meeting of July 14th recite that the body referred tax and assessment matters to a committee. The committee reported to the board on the 22d day of August what they recommended in reference to assessments and equalization for taxes; and it appears the report was unanimously concurred in by the board.

It is urged that the board could not act through or by means of a committee on complaints made against assessments, but that the law requires the whole board to act as a body. The 97th section does not specify the manner in which the board shall proceed, beyond the requirement that on the application of any person considering himself aggrieved, or who shall complain that another's property is assessed too low, they shall review the same, and correct it as shall appear to be just, and

provides for notice to the person whose property is claimed to be assessed too low. It is believed that all bodies composed of a large number of persons, act through committees to procure facts in reference to the matter to be acted upon, and receive recommendations as to the action that should be adopted. And it is believed that boards of supervisors have, ever since counties have become organized under the township organization law, acted through committees in dispatching the county business. This is believed to be general and uniform, and we are unable to see in what this course is improper. They can, no doubt, more satisfactorily, and with a great saving of time, obtain evidence and facts upon which to act in their final determination.

Notice was given, and appellants were afforded the opportunity to appear and have their grievances removed, if they had any of which to complain. There is no pretense that any injustice has been done to any one in the assessment, nor does it appear that any person sought to appeal from the assessment of his property, and was deprived of a hearing. We are not impressed with the fact that there has been the slightest wrong done to the tax-payers. That precise equality of burthen in proportion to value of property was not attained, is more than probable, as exactness and precision in valuing property for such purposes is not nor can it ever be attained. It would be Utopian to expect it from human agency.

Section 86 of the Revenue Law provides, that in counties under township organization the assessor, clerk and supervisor of the town shall meet, on the fourth Monday in June, for the purpose of reviewing the assessment; and on the application of any person who shall consider himself aggrieved, or who shall complain that the property of another person is assessed too low, they shall review the assessment, and correct the same as shall appear to them just. The 87th section provides, that the assessor shall give notice of at least ten days of the time and place of such meeting. And the 88th section provides, that the failure to give the notice or to hold the meeting shall not vitiate such assessment, except as to the excess of

valuation or tax thereon shown to be unjustly made or levied. Thus, it is seen that appellants had two opportunities afforded them of showing that they were over or wrongfully assessed, and if so, they had the further opportunity of proving the fact on the trial, and of. reducing their tax to the extent of the over valuation. But, so far as the record shows, they availed themselves of neither, and we must conclude that they had no grievance of which to complain, and if they conceive others have, they should leave them to make the defense, and not arrogate the right to themselves.

But the 88th section expressly declares, that the failure to give the notice or to hold that meeting shall not vitiate the assessment; and having so provided in that section, we have no warrant for saying that the failure to meet and act, as required by the 97th section, was to have any other or different effect. If it could be held that such a meeting was essential to the validity of the assessment or levy, the 191st section has clearly removed the objection, as it has provided that no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof; and any omission or defective act of any officer or officers connected with the assessment, may, in the discretion of the court, be amended. These statutes unmistakably show that it was the legislative will that mere technical objections, not affecting the justice of the tax itself, should not be regarded.

These enactments were, no doubt, designed to dispense with the strictness of the common law in the summary proceeding for the levy and collection of taxes—to remove and wipe out all mere technical objections in the raising of the revenue— thus placing the tax-payer who honestly owes his tax to the government, which affords him protection, on precisely the same footing as any other person who owes an honest debt. Nor should the courts interpose obstructions to thwart the legislative will.

In this case there is nothing shown from which it can be inferred that a single cent of the tax which appellants are resisting is unjust, and the presumption is that they have not been assessed in disproportion to that imposed upon other persons in the municipality in which this tax was levied. The tax, then, being just, even had the town officers or the board of commissioners failed to meet, under these enactments we could not hold that it vitiated the tax imposed on appellants' property, and much less that it would avoid the entire levy of the township or county in which the officers resided. The General Assembly has commanded, and all must yield obedience to its requirements.

We perceive no error in this record, and the judgment must be affirmed.

*Judgment affirmed.*