[No. 4603.   Decided March 11, 1904.]

JEFFERSON COUNTY, *Respondent,* v. JOHN TRUMBULL *et al., Appellants.*[1]

TAXATION—FORECLOSURE OF COUNTY DELINQUENCY CERTIFICATES —SUMMONS—SUFFICIENCY.   Where a summons in a general tax foreclosure states that the names of the reputed owners precede the description of the land, and that it was assessed to them, and the property is described, it sufficiently appears that the names where known were those given, and also what lands were sought to be subjected to the lien for taxes, and a motion to quash the summons is properly overruled.

APPEAL—REVIEW—HARMLESS ERROR ON ADMISSION OF EVIDENCE. In an action triable *de novo* on appeal, error cannot be predicated on the admission of incompetent evidence.

TAXATION — FORECLOSURE OF LIEN — DELINQUENCY CERTIFICATE BOOKS—COMPETENCY WHEN OFFERED EN MASSE.   An objection that tax certificate books are incompetent does not raise the point that they related to much other property and were offered *en masse* without reference to any particular page or entry; and in the absence of any demand for particularization their admission is not error.

SAME—BOOKS CERTIFIED BY SUCCESSOR OF OFFICER.   Certificate books in the possession of the county treasurer may be certified to by the successor in office of the treasurer who issued them.

SAME—DATE OF ISSUANCE OF CERTIFICATES—IDENTITY OF BOOKS HOW SHOWN.   Tax certificate books are competent when it appears from the certificate of the proper officer that the certificates of delinquency therein were issued by the proper officer after four years from the date of delinquency, and where the identity of the

[1]Reported in 75 Pac. 876.

books as intended certificates of delinquency further appears from the pages of the books, which were filed with the clerk of the superior court prior to the application for judgment and the issuance of judgment thereon.

SAME—CERTIFICATES OF DELINQUENCY IN BOOK FORM. Tax certificate books are not incompetent because the law at the time did not expressly authorize their issuance in book form.

SAME—FORECLOSURE OF LIEN AN EQUITABLE PROCEEDING—CORRECTION OF MISTAKES. While the foreclosure of delinquency certificates is properly a statutory proceeding the law expressly invokes the equity powers of the court, authorizing amendments and the correction of mistakes, and the entry of judgment on the merits, as the justice of the case requires (*Smith v. Newell*, 32 Wash. 369, followed).

Appeal from a judgment of the superior court for Jefferson county, Hatch, J., entered August 15, 1902, after a trial on the merits before the court without a jury, foreclosing delinquency tax certificates. Affirmed.

*Trumbull & Trumbull,* for appellants, contended, *inter alia,* that this is a special statutory proceeding and all the statutory forms and the methods of procedure prescribed must be strictly complied with. Black, Tax Titles, §§ 198-200; Cooley, Taxation, p. 481; *Gilchrist v. Dean,* 55 Mich. 244, 21 N. W. 330; *Simms v. Greer,* 83 Ala. 263, 3 South. 423; *McWilliams v. Great Spirit etc. Co.* (Kan.), 52 Pac. 905; *Hughes v. Linn County,* 37 Oregon 111, 60 Pac. 843; *Potts v. Cooley,* 51 Wis. 353, 8 N. W. 153; *Hilgers v. Quinney,* 51 Wis. 62, 8 N. W. 17; *McGahen v. Carr,* 6 Clarke (Iowa), 333; *Kellogg v. McLaughlin,* 8 Ohio 115; *Mayhew v. Davis,* 4 McLean 213, Fed. Cas. No. 9,347; *Randolph v. Barbour,* 6 Wheat. 128; *Jackson v. Shepard,* 7 Cowen 88, 17 Am. Dec. 502; *Westbrook v. Miller,* 64 Mich. 129, 30 N. W. 916; *Gilchrist v. Dean, supra; Clark v. Crane,* 5 Mich. 151, 71 Am. Dec. 776. The filing of the certificates with the clerk of the court in due statutory form is jurisdictional. *Simms v. Greer, supra; People v.*

*Otis,* 74 Ill. 384;*Bleidorn v. Abel,* 6 Iowa, 5, 63 Am. Dec.
428; *Thatcher v. Powell,* 6 Wheat. 119; *Morrill v. Swartz,*
` 39 Ill. 108; *Charles v. Waugh,* 35 Ill. 315; *Fox v. Turtle,*
55 Ill. 377; *Marsh v. Chesnut,* 14 Ill. 223; *Stilwell v.
People,* 49 Ill. 45; *Mix v. People,* 81 Ill. 118; *Durham v.
People,* 67 Ill. 417; *St. Anthony Falls Water Co. v.
Greeley,* 11 Minn. 321; *Burns v. Ledbetter,* 54 Tex. 374;
*Wellshear v. Kelley,* 69 Mo. 348; *Stambaugh v. Carlin,* 35
Ohio St. 209; *Lawrence v. Zimpleman,* 37 Ark. 643;
*Flint v. Sawyer,* 30 Maine 226; *Newkirk v. Fisher,* 72
Mich. 113, 40 N. W. 189; *Huntington v. Brantley,* 33 Miss.
451; *State v. Kirby,* 6 N. J. L. 143; *Wartensleben v.
Haithcock,* 80 Ala. 565; *Fleming v. McGee,* 81 Ala. 409,
1 South. 106; *Hough v. Hastings,* 18 Ill. 312; *Upton v.
Kennedy,* 36 Mich. 216; *Thompson v. Burhans,* 61 N. Y.
52; *Hughes v. Linn County, supra; Belden v. State,* 46
Texas 103. This is not an equitable suit; equity has no
jurisdiction to collect taxes. *Pierce County v. Merrill,* 19
Wash. 175, 52 Pac. 854; *People v. Biggins,* 96 Ill. 481;
*Board of Com'rs v. First Nat. Bank,* 48 Kan. 561, 30 Pac.
22; *Corbin v. Young,* 24 Kan. 199; *Louisville Trust Co. v.
Muhlenberg County* (Ky.), 23 S. W. 674; *Green County
v. Murphy,* 107 N. C. 36, 12 S. E. 122; *McHenry v.
Kidder County,* 8 N. Dak. 413, 79 N. W. 875; *Board of
Education v. Old Dominion Iron Co.,* 18 W. Va. 441;
*Thompson v. Allen County,* 115 U. S. 550, 6 Sup. Ct. 140.
It is a special proceeding to be strictly construed, and the
principles of equity do not at all apply. *Territory v.
Delinquent Tax List etc.* (Ariz.), 21 Pac. 888, and cases
cited therein; *Wason v. Bigelow,* 11 Colo. App. 120, 52
Pac. 636; *Perry v. Washburn,* 20 Cal. 318; *Young v.
Dowling,* 15 Ill. 481; *Altes v. Hinckler,* 36 Ill. 265, 85
Am. Dec. 406; *Forster v. Forster,* 129 Mass. 559. As to

such statutable powers, equity follows the law, and defective execution cannot be aided by equity.   2 Blackwell, Tax Titles, §§ 1078, 1079; *Gridley's Heirs v. Phillips,* 5 Kan. 349; *Stewart v. Stokes,* 33 Ala. 494, 73 Am. Dec. 429; *Kearney v. Vaughan,* 50 Mo. 284; *Smith v. Bowes,* 38 Md. 463.

*J. M. Ralston* (*A. W. Buddress,* of counsel), for respondent, contended, among other things, that under the new system of enforcing tax liens by a suit in equity, the rules contended for by appellants do not apply.   *Fisher v. People,* 84 Ill. 491; *Atlantic & P. R. Co. v. Yavapai County* (Ariz.), 21 Pac. 768; *Maish v. Territory,* 164 U. S. 599, 17 Sup. Ct. 193, affirming *Delinquent Tax etc. v. Maish* (Ariz.), 37 Pac. 730; *Haley v. Elliott,* 20 Colo. 379, 38 Pac. 771; *Otoe County v. Brown,* 16 Neb. 394, 20 N. W. 274, 641; *Denman v. Steinbach,* 29 Wash. 179, 69 Pac. 751; *Meagher v. Sprague,* 31 Wash. 549, 72 Pac. 108; *Otoe County v. Mathews,* 18 Neb. 466, 25 N. W. 618; *Chicago & N. W. R. Co. v. People,* 174 Ill. 80, 50 N. E. 1057; *State v. Central Pac. R. Co.,* 10 Nev. 61; *State v. Northern Belle Min. Co.,* 15 Nev. 385; *State v. Nevada Cent. R. Co.,* 26 Nev. 357, 68 Pac. 294, 69 Pac. 1042; *Mason v. Belfast Hotel Co.,* 89 Me. 384, 36 Atl. 624; *Bucksport v. Buck,* 89 Me. 320, 36 Atl. 456; *Kipp v. Dawson,* 31 Minn. 373, 17 N. W. 961, 18 N. W. 96; *Manseau v. Edwards,* 53 Wis. 457, 10 N. W. 554; *Ure v. Reichenberg,* 63 Neb. 899, 89 N. W. 414; *Torrey v. Millbury,* 21 Pick. 64; *Parker v. Sexton,* 29 Iowa 421; *Rhodes v. Sexton,* 33 Iowa 540.   The provisions will not be regarded as mandatory if the rights of the party are not prejudiced, and substantial compliance is sufficient.   *Seattle v. Clark,* 28 Wash. 717, 69 Pac. 407; *French v. Edwards,* 13 Wall. 506; *Turpin v. Lemon,* 187 U. S. 51,

23 Sup. Ct. 20; *Western Union Tel. Co. v. Indiana,* 165
U. S. 304, 17 Sup. Ct. 345.

HADLEY, J.—This is a tax foreclosure proceeding whereby the county of Jefferson seeks to foreclose as to certain taxes, the action being based upon alleged delinquency certificates issued to said county. The appellants alleged, by way of answer and objections, that they are the joint owners of certain lots and tracts of real estate involved in the application for judgment; that no certificates of delinquency were ever issued to the county, as against their property, and that no taxes were ever assessed or levied against said property for the year 1895, or any previous year included in the application. A trial was had and judgment of foreclosure rendered. This appeal brings the judgment here for review as to these appellants.

It is first assigned that the court erred in overruling appellants' motion, on special appearance, to quash the process in the action. The motion is urged upon the following alleged grounds: (1) that the summons does not purport to give notice to the owners of the land, in that it neither purports to state the names of the owners nor to whom the lands were assessed, but simply purports to notify the reputed owners; (2) that it does not appear from the summons when the certificates of delinquency were issued by the county treasurer to the county; (3) that the summons does not inform the defendants against what lands it is sought to foreclose the lien for taxes.

Referring to the first point mentioned, the summons does state that the name of the reputed owner precedes the description of the land, and that the lands were assessed to such reputed owner. That makes it sufficiently clear that the names where known are those which appear upon the treasurer's rolls as the owners of the property. Under

the present statute it is expressly declared that, for the purposes of foreclosure, such shall be considered and treated as the owners, and that, if upon the treasurer's rolls it appears that the owner is unknown, then the proceedings shall be against the property as belonging to an unknown owner. Pierce's Code, § 8694, Session Laws, 1901, pp. 385-6, § 3. The above statute controlled the remedy when this summons was published.

The second point urged under the motion to quash seems to be answered by the summons itself, which expressly states that the certificates of delinquency were issued to Jefferson county on January 31, 1898; and we are unable to see force in the third point, as the descriptions of the property are stated in the summons, and it seems to us that it is made clear to the defendants in the action what lands are sought to be subjected to the lien for taxes by the foreclosure. We think the court did not err in denying the motion to quash.

Several alleged errors are assigned that certain immaterial and incompetent evidence was introduced over objection. But this court has often said that it will, on trial *de novo,* consider only what it deems to be competent evidence, and will not reverse a judgment if there is sufficient competent testimony to support it.

It is assigned that the court erred in admitting in evidence, over objection, respondent's exhibits A to G, inclusive. These exhibits comprise seven large bound books, which were offered and received in evidence as certificates of delinquency. It is first urged that the books were offered in a mass, and that no particular volume, page, or entry was pointed out. Doubtless a demand for such particularization, if made in the court below, would have been granted. It certainly would have been a reasonable request

for the convenience of court and counsel. The certificate books, however, related to much other property in which appellants do not claim to be interested. Foreclosure in the same action was sought against many hundreds of other lots and tracts, and if, when the books were offered in evidence, these appellants desired to have pointed out the books and pages which related to their property, they should have made such a request. The mere fact that respondent did not point them out in the first instance, if in truth they existed, did not render the evidence incompetent. The only objection made was that the books were incompetent and that no foundation for their introduction had been laid. This objection did not reach the point above suggested, and, unless it had been brought to the attention of the court below, we shall not hold that the court erred in not requiring the books and pages to be designated at the time they were received in evidence.

The objection that the books were not competent, however, raises the most serious question in this case. The certificate attached to the back of each book, with variation as to the number of the volume referred to, is as follows:

"State of Washington, County of Jefferson, ss:

"I, T. J. Tanner, treasurer of Jefferson county, state of Washington, do hereby certify that this book number 1 is one of seven volumes, which said seven volumes contain the original certificates of delinquency or delinquent tax certificates, which said certificates of delinquency were duly issued by the treasurer of Jefferson county, state of Washington, on or about January 31st, A. D. 1898, to said Jefferson county, for taxes duly levied and delinquent upon the real property described in said certificates of delinquency and in each and all of said seven volumes containing said certificates of delinquency, as aforesaid, for taxes due to said Jefferson county and including all other taxes payable to said Jefferson county for the years 1891, 1892, 1893, 1894, and 1895, as shown by this volume and each

and all of said seven volumes. And I do hereby further certify that said seven volumes, as aforesaid, of which this is one, contains all the certificates of delinquency issued by said treasurer of Jefferson county to said Jefferson county, as hereinbefore set forth, and that each and all of said volumes numbered one, two, three, four, five, six, and seven are the certificates of delinquency issued by the treasurer of Jefferson county, Washington, as hereinbefore set forth, to said Jefferson county, for taxes due and delinquent upon the property described in said certificates of delinquency and payable to said Jefferson county for the year A. D. 1895 and prior years.

"Dated this 24th day of October, A. D. 1901.
"(Seal) T. J. Tanner,
"Treasurer of Jefferson County, Washington."

It is urged that the county treasurer, who certified to the above, certified that the book certificates were issued at a date prior to the time he entered upon the duties of his office. He was, however, county treasurer, and, if the certificate was a proper one for that officer as such to make, he had as much power to make it as his predecessor. Under § 98, pp. 182, 183, Laws 1897, which was in force when these certificates might have been first issued, no particular time is designated for issuing the certificate to the county. It is only necessary that the property shall remain on the assessment rolls, and that no certificate of delinquency may have been sold to individuals. In the next amended statute upon this subject, § 15, p. 297, Laws 1899, no specific time is mentioned except that the certificates to the county shall not issue until after four years from the date of delinquency; and in the next, Laws 1901, p. 385, § 3, the time is merely fixed at five years after delinquency. Thus no time is mandatorily fixed for issuing the certificates. It is directorily provided that they shall issue after certain dates, but it is not stated that it shall be done immediately. They were issued in this instance after the proper date

and by an officer competent to issue them. While it is true one date is named as the date of issuance, and a subsequent one as the date of signing, yet since either date was at a time when certificates to the county could be properly issued, and since they are signed by a competent official, we think they became competent as evidence.

In addition to what was contained in the so-called certificate set out above, each page of the books contained other matter showing manifestly that the books were intended to be, and were prepared as, certificates of delinquency issued to the county. At the top of each page is the following: "Certificate of Delinquency Issued to Jefferson County, Washington." Upon each page also appears the description of the property, name of owner when known, year of assessment, valuation, amount of tax, and over the final column is the following: "Amount of County's Certificate." The books are also marked as filed with the clerk of the superior court of Jefferson county December 30, 1901, which was prior to the application for judgment and issuance of summons in this action.

It is urged that the law at the time these taxes became delinquent did not authorize the issuance of these certificates to the county in book form. It is true that plan was first specifically mentioned in the amendment of 1899, *supra*, but it does not follow that the act of 1897, *supra*, intended that a separate slip of paper, called a certificate, should be issued by the county to itself for each of the thousands of delinquent lots and tracts of lands. Such a course would, in some instances, have been so burdensome as to have been impracticable. In the absence of such an intention expressly stated in the act of 1897, we think it may well be concluded that the act of 1899 merely declared specifically what was before the real intention of the legislature in that regard.

Appellants offered no evidence but, after respondent rested, moved for judgment in their favor on the ground that respondent had failed to prove a case by competent evidence. The motion was overruled, and the court made findings which it is claimed are not sustained by evidence. We think there was sufficient evidence to sustain the findings, and appellants did not show that they were in any way injured.

Respondent argues that this is a proceeding in equity, that the court sitting in equity will regard that done which ought to have been done, and that all necessary amendments touching the seeming irregularities were made. Appellants upon the other hand insist that this is not a proceeding in equity, but is a special proceeding under the statute not governed by equitable principles, and that each step outlined in the statute must be strictly pursued. While perhaps it may more properly be called a statutory proceeding, yet the statute, § 8697, Pierce's Code, § 18, p. 299, Laws 1899, and § 103, pp. 184, 185, Laws 1897, provides that the court may vacate and set aside the certificate, or make such other order as in law and equity may be just. Thus the equitable powers of the court in the premises are recognized by the statute, and the same section also specifically authorizes the making of amendments and the correction of errors of the taxing officers, even to the extent that these may be "supplied and made to conform to law by the court." In *Smith v. Newell,* 32 Wash. 369, 73 Pac. 369, this court broadly interpreted the above statute as we believe it was intended in the interest of all concerned. The court said:

"This provision of the statute it seems to us was intended to enable the courts to correct just such omissions as were made by the treasurer in this instance. It was intended to put it in the power of the court on the hearing of a tax

foreclosure suit to render judgment as the evident justice of the case required. That is, it was intended that the courts should inquire into the merits of complaints made against tax proceedings and allow them to prevail only when the matter complained of operated to the injury of the complaining party and is incurable by any judgment that can be entered in the foreclosure procedings."

We think the above language is particularly applicable here. No injury is shown to have resulted to appellants.

Objection is made in this court to the form of the decree, but we are unable to see that appellants are injured by its terms. Counsel upon both sides have prepared elaborate briefs, and have cited many authorities to support their respective arguments. A review of them all is impracticable, and we believe it unnecessary to further extend the discussion of the case.

The judgment is affirmed.

MOUNT, ANDERS, and DUNBAR, JJ., concur.