[No. 6593. Decided March 11, 1907.]

SOUND INVESTMENT COMPANY, *Respondent*, v. BELLINGHAM BAY LAND COMPANY, *Appellant.*[1]

TAXATION — FORECLOSURE — DEFENSES — TENDER —ASSESSMENT IN SOLIDO—CORRECTION BY COURT—REDEMPTION. In an action to foreclose a delinquent tax certificate against city lots, in which it appears that the plaintiff has paid subsequent taxes assessed against the property, including an assessment for three years which was irregular because made against the lots *in solido*, a tender by defendant of all taxes and costs exclusive of the irregular assessment for such three years is insufficient to defeat the action; and inasmuch as it was the duty of either party to have the court ascertain and segregate such *in solido* assessment and correct the same, a judgment of foreclosure will be reversed, without costs to either party, with directions to segregate and ascertain the proper assessment for the three years in question, and to allow redemption therefrom within a specified time.

SAME—SEPARATE ASSESSMENTS—APPORTIONMENT BY COURT—EVIDENCE—VALUE OF LOTS. The assessment of lots *in solido* instead of separately, as required by statute, is not void but an irregularity that may be corrected by the courts; but the oral testimony of the assessors is inadmissible to show that the separate amounts assessed were shown by slips of paper, the same not being in book form, or identified, or referred to on the tax rolls; and the court must determine the proper assessment from evidence of the value of the lots.

TAXATION—FORECLOSURE—ASSIGNMENT OF CERTIFICATE—EVIDENCE—SUFFICIENCY. In an action to foreclose a delinquency tax certificate, the purported indorsement on the back of the certificate of the signature of the person in whose name it was issued is *prima facie* evidence of its assignment to the plaintiff, taken in connection with plaintiff's possession.

Appeal from a judgment of the superior court for Whatcom county, Joiner, J., entered September 7, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to foreclose a tax lien. Reversed.

[1]Reported in 88 Pac. 1117.

*Black, Kindall & Kenyon* and *Dorr & Hadley,* for appellant.

*Fairchild & Bruce* and *Newman & Howard,* for respondent.

Root, J.—This was a tax foreclosure proceeding, instituted by respondent on a certificate of delinquency covering certain lots in the city of Bellingham. A written defense and answer with objections was filed, and a trial had. The appellant alleged that respondent was the owner and holder of a certificate of delinquency issued by the county treasurer for delinquent taxes for the last half of the year 1899, and for the years 1900 to 1904, inclusive. The answer and defense denied that respondent was the owner and holder of said certificate, and that there was any sum due thereon except $121.84, and costs amounting to $3.20; the same being taxes for the last half of 1899 and for all of the years 1900 and 1901, and which amount was tendered to the county treasurer. It was averred that this appellant had been since 1898 the owner of all of the lots in said block 25, there being several lots therein aside from those involved in this proceeding; one lot, however, having since the commencement of this action, been sold to Alfred L. Black, Jr., subject to all taxes chargeable against it. The lots numbered 1 to 16, inclusive, had certain taxes standing against them on the records for the years 1899 to 1904, inclusive. Appellant paid the taxes for 1905, and on April 3, 1906, tendered to the county treasurer $125.04, that being the amount in full of all taxes, interest, costs, and costs of this suit, on account of taxes claimed for the years 1899, 1900, and 1901; the tender being refused solely because appellant refused to tender or pay any taxes for the years 1902, 1903, and 1904. This tender has been kept good, and the money paid into court where it now remains. The sixteen lots were listed, valued, and assessed upon the tax rolls separately for the years 1899, 1900, 1901, and 1905.

In the years 1902, 1903, and 1904, the sixteen lots were listed on the tax and assessment rolls in a group with an aggregate valuation, but no separate listing or separate valuation.   These rolls had the usual affidavits of the assessor as to their verity, and were by that officer turned over to the county auditor, as required by law, and were the only tax rolls, records, memoranda, or lists equalized by the board of equalization, and are now in the treasurer's office as public records.   The sixteen lots vary materially in size, some being small fractions and others unusually large.   They lie differently on the contour of the ground and on different streets, and are and were, during each of the years named, of different value.   The certificate of delinquency was issued to one Richard Hayter, whose name appears upon its face.   No assignment was pleaded or offered in evidence, other than that the name "Richard Hayter" appeared written like a signature or endorsement on the back of said certificate. Over appellant's objection, respondent was permitted to introduce testimony of the present and former assessors, to the effect that in preparing the "tax and assessment roll" they had used certain slips of paper that were fastened together with eyelets, on which, largely in pencil, was written a list of each lot from 1 to 16 aforesaid, with its valuation put upon the respective lots by the assessor, and that these sums were totaled to arrive at the amount assessed against the group of sixteen.   These slips were not in book form, and were not certified and bore no mark of identification, and no reference to them appears upon the tax rolls, or anything tending to show any connection between them and such rolls, nor showing that the board of equalization ever considered them.   The findings and conclusions of the trial court were not separately stated, although, before they were signed, appellant filed and submitted to the court its motion to require that findings, conclusions, and judgment be separately designated, stated, and signed.   Plaintiff filed a cost bill for $62.70, of which $53 was a claim as mileage of a witness for five hundred and

thirty miles, and fifty cents for the issuance of the certifi-
cate of delinquency.    Appellant moved to strike these two
items from said bill, which motion was denied.    The trial
court held in favor of respondent, and from its judgment this
appeal is prosecuted.

It is the contention of appellant that the assessment sought
to be enforced for the years wherein the sixteen lots were
assessed in bulk was absolutely void, and that it should have
been permitted to retain or redeem the property by paying
the amount of taxes due for the years wherein the lots were as-
sessed separately, together with penalties, interests, and costs.
It quotes § 1, art. 7, of the Constitution, which provides for
the taxation of property "in proportion to its value *to be
ascertained as provided by law,*" and § 5, art. 7, which says,
"no taxation shall be levied except in pursuance of law," etc.
In *Lockwood v. Roys,* 11 Wash. 697, 40 Pac. 346, this court
held that an assessment of lots *in solido* was illegal.    As that
decision was prior to the Laws of 1901, p. 167, § 3, allow-
ing listing in groups with valuation "per lot" stated, and to
the curative statute of 1899, p. 299, § 18, allowing the court
to correct errors and omissions, and to those of 1899 which
authorize the owner to require the county treasurer or other
officers to segregate and separately apportion the amounts
chargeable to given parcels or portions of property assessed,
it does not necessarily follow that every assessment *in solido*
is void under the present laws, even though the amount per
lot does not appear.    While it might perhaps be held in some
cases that an assessment *in solido* was void, we are inclined
to treat the one involved in this proceeding as valid to the
extent of the just tax which should be borne by each of these
lots.    In other words, we think this tax roll was incompetent
to establish the *amount* of tax due against each of these lots
for the years wherein the sixteen lots were assessed in bulk.
It was, however, competent to show that the property was
assessed and a tax levied against it, but in an irregular and
erroneous manner.    Under our constitution and laws, taxation

is the rule.    All private property is subject to taxation unless specially exempted by statute.    Knowledge of this fact must be charged to every person who owns or has anything to do with such property.

The delinquency certificate for the years wherein the lots were assessed separately was valid, and the holder thereof was authorized to foreclose it for those years.    This it could not do without paying up all the taxes that had accrued since that time.    Having bought the certificate for the years when the property was properly taxed, it should have requested the county treasurer to have apportioned the tax to the different lots for the years wherein they were assessed in bulk, or, having paid the amount shown to be due by the tax roll, it should have called this matter to the attention of the court, when foreclosing the tax certificate, with a request that the court take proper evidence to ascertain the tax due upon each one of these lots for each one of the years wherein they were assessed together.    The appellant when it appeared in this proceeding, in addition to the tender which it made, should also have requested the court to determine the amount of taxes justly due upon each of said lots for the years wherein they were assessed *in solido*, and offered to pay such amount as should be ascertained to be legally and justly due on account thereof.    Thereupon the court should have granted it permission to redeem by paying the amount so found to be rightfully due.    Whether the tax shown by the tax roll upon the lots for the years when assessed in a group be held to be correct in amount or otherwise, it is certain that the property was taxable for those years, and that said taxes are chargeable against the property; and when the matter came before the court, as it did in this proceeding, it was the duty of all the parties interested to see that the tax was properly distributed.    It having been necessary for the holder of the certificate to pay the taxes justly due to date before instituting a suit in foreclosure, it follows that it was the duty of the property owner seeking to defeat said foreclosure or to

redeem the property to pay all of the taxes which said certificate holder had been required to pay, or was found by the court in said proceeding holden to pay.

In the case of *George v. Dean,* 47 Tex. 73, 88, the supreme court of that state, in discussing a tax matter, among other things, said:

"This omission on the roll should have been corrected and supplied, no doubt, as ordered by the county court, when the defect was ascertained.  But the neglect or failure of the court to see that this was done, certainly did not relieve the taxpayers from liability for the payment of the tax, and at most, it can only be said, that the roll, by reason of the omission, was an irregular or defective warrant for the collection of the tax, and would not justify the collector in the seizure of property for its payment. . . .  Whatever may be the effect of the omission, it certainly did not relieve appellants from liability for the tax, or entitle them to the interposition of a court of equity in their behalf."

In the case of *Smith v. Newell,* 32 Wash. 369, 373, 73 Pac. 369. this court used the following language:

"It was intended to put it in the power of the court on the hearing of a tax foreclosure suit to render judgment as the evident justice of the case required; that is, it was intended that the courts should inquire into the merits of complaints made against tax proceedings, and allow them to prevail only when the matters complained of operated to the injury of the complaining party, and is incurable by any judgment that can be entered in the foreclosure proceedings. . . . Before declaring the lien of the tax irrevocable it has given them their day in court, where they had the opportunity to dispute every question going to the right and power of the state to charge the property with the tax. . . . Surely, where these conditions appear, the courts ought not to declare the tax void because of the mere omission of a ministerial officer to perform a statutory duty.  When a tax is declared void, the effect is always to release certain property of its just proportion of the public taxes, and unjustly increase that of other property.  On the plainest principles of equity and justice, therefore, the courts ought to insist that a showing

of injury incapable of being corrected be made, before it declares the tax void."

In the case of *Gove v. Tacoma*, 34 Wash. 434, 444, 76 Pac. 73, this language was employed:

"If this were a foreclosure of a tax lien under the present general revenue law, with the property owner before the court, then under the liberal construction of the statute adopted by this court in *Smith v. Newell*, 32 Wash. 369, 73 Pac. 369, and approved in the recent case of *Jefferson County v. Trumbull*, 34 Wash. 276, 75 Pac. 876, the above omissions could probably be corrected by the court."

The revenue statute, Laws of 1899, page 294, § 11, contains this provision:

"Any person desiring to pay taxes upon any part or parts of real estate heretofore or hereafter assessed as one parcel, or tract, may do so by applying to the county treasurer, who must carefully investigate and ascertain the relative or proportionate value said part bears to the whole tract assessed, on which basis the assessment must be divided and taxes collected accordingly."

Cooley, Taxation (2d ed.), 313, says this:

"Still another method of ·curing defects which may here be noticed is that which is sometimes provided by statutes allowing the parties concerned to have a judicial review of the proceedings on a proper application."

At § 18, page 299, Laws of 1899, we find the following:

"No assessments of property or charge for any of said taxes shall be considered illegal on account of any irregularity in the tax lists or assessment rolls or on account of the assessment rolls or tax lists not having been made, completed or returned within the time required by law, or on account of the property having been charged or listed in the assessment or tax list without name or any other name than that of the owner, and no error or informality in the proceedings of any of the officers connected with the assessment, levying or collection of taxes, shall vitiate or in any manner affect the tax or the assessment thereof, and any irregularities or informality in the assessment rolls or tax lists or in any of the

proceedings connected with the assessment or levy of such taxes or any omission or defective act of any officer or officers connected with the assessment or levying of such taxes, may be, in the discretion of the court, corrected, supplied and made to conform to law by the court."

It is evident from this and other provisions in the revenue law that the legislature intended the court to have wide powers in the matter of correcting errors or omissions on the part of taxing officers, and in facilitating the collection of such taxes as should be found to be justly chargeable. In the case at bar, the officers having charge of taxation matters attempted to levy a tax against this property. By assessing it and placing the tax thereupon *in solido* instead of separately, and in setting forth the valuation and levying the tax in the aggregate instead of so much per lot, they failed to establish the definite amount chargeable against each particular lot. This was an error or oversight which could not relieve the property from the burden of a just and legal tax, and which ought not to prevent the state from collecting, without unnecessary trouble and delay, such tax. The proceeding which we have suggested offered an opportunity for appellant to be heard as to the amount of tax which ought in reason, law, and justice to be charged against each of the lots in question. It is urged that the tax roll was incompetent to prove the amount of the tax upon any one lot for any year when the lots were assessed all together. This was doubtless true; and the same may be said of the slips and the oral testimony of assessors to which objection was made by appellant. But the roll revealing the irregular manner of the assessment, it was then incumbent upon the court to then and there determine what would have been a proper apportionment of the tax to the different lots for each of these years, and this should have been done by evidence as to the relative value of the lots rather than by proving what the assessors did to arrive at the aggregate value of the group of lots. As bearing upon the questions herein discussed, we may

cite: 4 Current Law, pp. 1624-5; *Beers v. People ex rel. Miller*, 83 Ill. 488; *Haley v. Elliott* (Colo.), 38 Pac. 771; *Mills v. Gleason*, 11 Wis. 470, 78 Am. Dec. 721; *Warden v. Board of Supervisors*, 14 Wis. 672; *Thomas v. Lincoln County*, 41 Wash. 150, 83 Pac. 18; *Douglas v. City of Fargo* (N. D.), 101 N. W. 919; *Crowder v. Riggs* (Ind.), 53 N. E. 1019; *Corbet v. Town of Rocksbury*, 94 Minn. 397, 103 N. W. 11; *Albany etc. Min. Co. v. Auditor General*, 37 Mich. 391; *Los Angeles County v. Ballerino*, 99 Cal. 593, 32 Pac. 581, 34 Pac. 329.

Appellant contends that there is not sufficient proof that respondent was the owner or holder of the delinquency certificate, inasmuch as there was no proof of Richard Hayter's, in whose name it was issued, having assigned it to respondent. The certificate itself bore upon its back, under the assignment clause, the words "Richard Hayter." Although there was no evidence as to who wrote these words, yet we are inclined to hold that they were sufficient to establish *prima facie* an indorsement by Hayter, and this, together with the fact that respondent was in possession of the certificate, was sufficient, in the absence of contradictory evidence, to justify the holder in maintaining the foreclosure proceeding.

It was also urged that the trial court erred in not making findings, conclusions, and judgment separately. We think this was an error; but whether or not a reversible one, it is unnecessary to decide in this case.

The question is also raised as to the costs allowed. In view of the disposition of the case which we contemplate, it will be unnecessary to pass upon this question. The case is reversed and remanded with the following instructions: Either side may request the trial court to make a finding as to what would be the just and reasonable amount of tax to be borne by each one of these lots for the years during which they were assessed in bulk. When these amounts are ascertained and adjudged by the court, the appellant shall be given a reasonable time by the court within which to redeem the property

by paying the taxes, penalties, interests, and costs for the years when the property was assessed separately, together with the amount found by the court to be justly and legally chargeable against said lots for the other years, together with interest, penalties, and costs. If appellant does not so redeem within the time allowed by the court, a decree of fore-closure shall be entered in favor of the respondent. Each party shall pay its own costs in both courts.

HADLEY, C. J., FULLERTON, MOUNT, DUNBAR, and CROW, JJ., concur.